**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| **JAMES BLANN,** | § | |
| **TDCJ No. 02301954,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **W-20-CV-1072-ADA** |
| | § | |
| **BOBBY LUMPKIN, Director,** | § | |
| **Texas Department of Criminal Justice,** | § | |
| **Correctional Institutions Division,** | § | |
| | § | |
| **Respondent.** | § | |

## ORDER

Before the Court are Petitioner James Blann's pro se Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1) and Respondent's Response (ECF No. 8). Having reviewed the record and pleadings submitted by both parties, the Court concludes Petitioner's federal habeas corpus petition should be denied under the standards prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See* 28 U.S.C. § 2254(d).

## I.  Background

In September 2019, Petitioner was charged by indictment with one count of deadly conduct: discharging a firearm into a habitation, building, or vehicle. (ECF No. 9-2 at 4-6.) In November 2019, and pursuant to an open plea, Petitioner pled guilty to the charge; in January 2020, he was sentenced to eight years imprisonment. *State v. Blann*, No. 81028 (426th Dist. Ct., Bell Cnty., Tex. Jan. 6, 2020). (*Id.* at 17, 24-26.) Petitioner did

1

not file a direct appeal, a Petition for Discretionary Review with the Texas Court of Criminal Appeals (TCCA), or a Petition for Writ of Certiorari with the United States Supreme Court.

On May 27, 2020, Petitioner filed his state habeas corpus application, listing the following four grounds of relief:

1. Petitioner's trial counsel provided ineffective assistance he allowed a different judge to preside over Petitioner's sentencing than the judge who took Petitioner's guilty plea;

2. The State destroyed evidence and failed to disclose proper evidence at Petitioner's sentencing hearing. The deficiencies put Petitioner under duress and caused him to involuntarily plead guilty. Further, the State failed to disclose Petitioner's mental illness.

3. Petitioner's Due Process rights were violated when the State failed to notify Petitioner that a witness would testify at his sentencing hearing. His Due Process rights were also violated when he agreed to a five year sentence but was sentenced to eight years imprisonment.

4. Petitioner's guilty plea and sentence violated *Brady* and the Ex Post Facto Clause.

(*Id.* at 64-81.)

On August 25, 2020, the state habeas court adopted the State's Findings of Fact and Conclusions of Law and recommended denying the application. (*Id.* at 113-23.) On October 14, 2020, the TCCA denied Petitioner's application without written order on the findings of the trial court without hearing and on the court's independent review of the record. (ECF No. 9-1.)

On November 10, 2020, Petitioner filed his federal petition for a writ of habeas corpus, listing the following four grounds of relief:

1. Trial counsel provided ineffective assistance when Petitioner pleaded guilty in one court but was sentenced to eight years imprisonment in another court.

2. The State violated Petitioner's right to equal protection by withholding information about his mental health.

3. The State violated Petitioner's due process rights when it failed to notify him of a witness at the sentencing hearing and when it reneged on the five-year plea bargain.

4. Petitioner's guilty plea and sentence violate the Constitution's Ex Post Facto clause.

(ECF No. 1.) On January 21, 2021, Respondent filed their response. (ECF No. 13.)

## **II. Standard of Review**

Petitioner's federal habeas petition is governed by the heightened standard of review provided by AEDPA. *See* 28 U.S.C. § 2254. Under § 2254(d), a petitioner may not obtain federal habeas corpus relief on any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Brown v. Payton*, 544 U.S. 133, 141 (2005). This demanding standard stops just short of imposing a complete bar on federal court re-litigation of claims already rejected in state proceedings. *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)).

A federal habeas court's inquiry into unreasonableness always should be objective rather than subjective, with a focus on whether the state court's application of clearly established federal law was "objectively unreasonable" and not whether it was incorrect

3

or erroneous. *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (citing *Williams v. Taylor*, 529 U.S. 362, 409 (2000)). Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. *Richter*, 562 U.S. at 102. A petitioner must show that the state court's decision was objectively unreasonable, which is a "substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (citation omitted). As a result, to obtain federal habeas relief on a claim previously adjudicated on the merits in state court, Petitioner must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103; *see also Bobby v. Dixon*, 565 U.S. 23, 24 (2011). "'If this standard is difficult to meet—and it is—that is because it was meant to be.'" *Mejia v. Davis*, 906 F.3d 307, 314 (5th Cir. 2018) (quoting *Burt v. Titlow*, 571 U.S. 12, 20 (2013)).

## III. Analysis

1. Petitioner's Guilty Plea

Petitioner's habeas petition attacks his guilty plea by arguing it is invalid based on ineffective assistance of counsel and violations of Due Process, Equal Protection, and the Ex Post Facto clause. It is axiomatic that a guilty plea is valid only if entered into voluntarily, knowingly, and intelligently, "with sufficient awareness of the relevant circumstances and likely consequences." *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005);

4

*United States v. Hernandez*, 234 F.3d 252, 254 (5th Cir. 2000). A plea is intelligently made when the defendant has "'real notice of the true nature of the charge against him.'" *Bousley v. United States*, 523 U.S. 614, 618 (1998) (citing *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)). A plea is voluntary if it does not result from force, threats, improper promises, misrepresentations, or coercion. *United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997). "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)); *United States v. Juarez*, 672 F.3d 381, 385-86 (5th Cir. 2012).

At the plea hearing, the trial court informed Petitioner he had been charged with a third-degree felony, which was punishable by two to ten years imprisonment, along with up to a $10,000 fine, and that, because there was no plea bargain "the full range of punishment, anywhere from two to ten years would be available to the judge on disposition in your case, correct?" Petition testified "yes." Petitioner confirmed that he had gone through the State's evidence with his lawyer and that he was not asking the State to provide any more discovery. Petitioner also responded "No sir" when the trial court asked if he had any mental health problems or issues that could prevent him from understanding his rights and what was happening in court.

The court also detailed the rights Petitioner had—the right to plead not guilty, to have a jury trial, to confront and cross-examine witnesses, and to remain silent—and asked if he understood these rights. Petitioner testified he understood. Petitioner then

pleaded guilty to deadly conduct-discharging a weapon, and testified he was pleading guilty freely and voluntarily, and denied that anyone had forced, coerced, or intimated him into pleading guilty. Petitioner responded "yes, sir" when the trial court asked if he was "pleading guilty simply because [he was] truly guilty as charged and not for any other reason?" The trial court then concluded there was sufficient evidence to find Petitioner guilty. (ECF No. 9-2 at 33-38.)

The voluntariness of Petitioner's plea is further demonstrated by his signature on the "Written Plea Agreement." (ECF No. 14-10 at 16-20). The agreement shows that Petitioner was represented by counsel and includes the following judicial confession:

> Under my oath I swear my true name is James Edward Blann and I am 44 years of age; I have read the indictment or information filed in this case and I committed each and every act alleged therein, except those acts waived by the State. All facts alleged in the indictment or information are true and correct. I am guilty of the instant offense as well as all lesser included offenses. All enhancement and habitual allegations set forth in the indictment or information are true and correct, except those waived by the State. All deadly weapon allegations are true and correct. All other affirmative findings made by the Court pursuant to this Written Plea Agreement are true and correct. I swear to the truth of all of the foregoing and further, that all testimony I give in the case will be the truth, the whole truth and nothing but the truth, so help me God.

(*Id.* at 21.) Petitioner signed the plea agreement as did Mr. Michael Cooper, Petitioner's trial attorney, who certified he had "timely advised my client of any and all plea bargain offers by the State in this case. I have fully reviewed and explained the above and foregoing court admonishments, rights, and waivers, as well as the judicial confession to the Defendant. I am satisfied the Defendant is legally competent and has intelligently, knowingly, and voluntarily waived his rights and will enter a guilty plea understanding the

consequences thereof." (*Id.* at 22.) The trial judge and Assistant District Attorney also signed the plea agreement. (*Id.* at 23.)

Petitioner's signature on the plea agreement is prima facie proof of the validity of the plea, *Theriot v. Whitley*, 18 F.3d 311, 314 (5th Cir. 1994), and is entitled to "great evidentiary weight," *United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994) (citing *Hobbs v. Blackburn*, 752 F.2d 1079, 1081 (5th Cir. 1985)). By entering a knowing, intelligent, and voluntary guilty plea, a defendant waives all non-jurisdictional defects preceding the plea. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *United States v. Scruggs*, 714 F.3d 258, 261-62 (5th Cir. 2013). This includes claims of ineffective assistance of counsel unless the alleged ineffectiveness relates to the voluntariness of the guilty plea. *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983) (waiving claims of ineffective assistance, except for claims related to voluntariness of plea). As such, the only claims that survive a guilty plea are those implicating the validity of the plea itself. *Tollett*, 411 U.S. at 267; *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000). Accordingly, the Court considers Petitioner's claims only to the extent they implicate the voluntariness of his guilty plea. *See Hill*, 474 U.S. at 56 (citing *Tollett*, 411 U.S. at 267).

a.  *Ineffective Assistance of Counsel (claim 1)*

In his first claim for relief, Petitioner argues his trial counsel, Mr. Cooper, provided ineffective assistance when counsel allowed him to plead guilty before one judge with the agreement that Petitioner would receive a five-year sentence, but then at sentencing, a different judge sentenced Petitioner to eight years imprisonment.

7

The appropriate standard for evaluating the effectiveness of counsel with regard to a guilty plea is the familiar *Strickland* two-part test. *Hill*, 474 U.S. at 58 (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). Under *Strickland*, Petitioner must demonstrate (1) counsel's performance was deficient, and (2) this deficiency prejudiced his defense. 466 U.S. at 687-88, 690. To establish counsel's performance as deficient, a petitioner must first show his counsel's performance fell below "an objective standard of reasonableness." *Id*. at 688–89. In the context of a guilty plea, proving *Strickland*'s prejudice requirement turns "on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S at 59. This means, "in a guilty plea scenario, a petitioner must prove not only that his attorney actually erred, but also that he would not have pled guilty but for the error" and, instead, "would have insisted upon going to trial." *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994) (citations omitted). This assessment depends in part on "a prediction of what the outcome of a trial might have been." *Id*.

Mr. Cooper responded to Petitioner's claims in an affidavit filed before the State habeas court. Mr. Cooper attested as follows.

> 4. Prior to James Edward Blann (the "defendant") entering a plea before Judge Paul Lepak in the 264th Judicial District Court of Bell County, Texas I thoroughly reviewed the discovery in his case. Such discovery revealed he was charged with Deadly Conduct Discharging a Firearm, a Third Degree Felony. This offense arose out of the defendant firing a firearm repeatedly in the front yard of a home in a residential neighborhood and striking an unoccupied vehicle in the vicinity. The police were called by an independent witness viewing this occurrence from a window of an adjacent house, who happened to be a deputy sheriff from another county. I investigated the law applicable to the case, and based on the facts and applicable law determined what possible defenses he might have. Prior to the defendant entering his plea I thoroughly reviewed the discovery with him on more than one occasion, as well as the applicable law and any defenses he might

8

have, which appeared limited. He appeared to understand our discussions and was able to converse with me.

. . . .

7. I discussed a possible plea bargain with the state, which resulted in a plea offer of 5 years confinement in the Texas Department of Corrections. I communicated this offer to the Defendant and discussed it with him prior to his entering a plea in the case. I recommended he not accept a plea of 5 years based on the discovery, applicable law, and possible defenses which were limited. I explained to him it was my recommendation that he enter an open plea, that is a plea without a plea bargain. I told him if he did so, the Court would order a presentence investigation prior to sentencing, which I explained to him. I also told him I believed that it was possible, based on the nature of a presentence investigation, and any testimony we might choose to put on at sentencing that the judge could put him on probation or a form of probation known as deferred adjudication, which I explained to him. I also told him that the maximum sentence the Court could assess for a third degree felony was a term of 10 years confinement in the Texas Department of Corrections, I also told him that if the Judge did not grant probation, that I believed the Judge would sentence him somewhere in the range of what was being offered, to wit 5 years, but I couldn't guarantee such, and that the Judge could sentence him up to 10 years. Based on those discussions, on November 5, 2019, the plea papers were changed from a plea of 5 years to an open plea. Therefore, the defendant did not enter a plea for 5 years on November 5, 2019, but entered an open plea. Judge Lepak withheld a finding of guilt, ordered a presentence investigation and reset the case for sentencing.

8. This case was assigned to the 426th Judicial District Court of Bell County, Texas. I do not recall exactly why it was moved to the 264th Judicial Court for the entry of a plea, whereas all pre-trials and other matters has been heard by the 426th Judicial District Court, Judge Fancy Jezek. I seem to remember it was because Judge Jezek was in a jury trial on the day it was set for a plea or had some other conflict, that resulted in the plea being heard by the·264th Judicial Court on that day. The sentencing was held in the 426th Judicial District Court before Judge Jezek on January 6, 2020. After hearing evidence and reviewing the presentence investigation Judge Jezek sentenced the defendant to 8 years confinement in the Texas Department of Corrections.

(ECF No. 9-2 at 107-09.)

The state habeas court made the following findings of fact:

34. The record reflects that the Applicant's case was indicted in Bell County's 27th Judicial District Court, but was assigned to the 426th Judicial District Court, the Honorable Fancy H. Jezek presiding.

35. The record further reflects that the Applicant's plea of guilty was heard in Bell County's 264th Judicial District Court, the Honorable Paul L. LePak presiding, but was returned to Judge Jezek in the 426th District Court for sentencing.

36. The Court takes judicial notice that Mr. Cooper does not have control over the court dockets, therefore, the Court finds that he had little to do with which court heard the Applicant's case.

37. Moreover, the Court finds that the Government Code allows the judges in district courts to sit for one another or hear each other's cases whenever necessary, therefore, the Court finds that it was not improper for Judge LePak to hear a case assigned to Judge Jezek's court. *See* TEX. GOV'T CODE § 24.003 (West Supp. 2018).

38. The Court finds that the Applicant did sign a plea agreement for 5-years, but as Mr. Cooper explained in his affidavit, after discussing it with him, before he entered his plea of guilty in front of Judge LePak, the plea papers were changed to read an open plea.

39. The record reflects that on the document entitled "Written Plea Agreement" in the trial court's file, which is signed by the Applicant, Mr. Cooper, the State and Judge LePak, the language under the word "recommendation" on the first page is marked through, and the word "open" is hand written in. *See* Written Plea Agreement.

40. In addition, the record reflects that two sets of initials appear next to the altered text, and one of them is clearly "J B." *Id.*

41. Moreover, the record reflects that before Judge LePak accepted his plea of guilty, he asked the Applicant if he understood that there was no plea bargain in his case, which meant that the full range of punishment was available to the sentencing court, and the Applicant responded that he did (I-RR-6).

42. Therefore, the Court finds no showing that Mr. Cooper handled the Applicant's case improperly, tricked him into entering an open plea, or, in

general, performed deficiently by committing unprofessional errors that hindered his defense. *See Strickland v. Washington*, 466 U.S. 688, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984).

(*Id.* at 117-18.)

As noted above, the plea agreement is prima facie evidence of Petitioner's awareness of the "'relevant circumstances and likely consequences'" of his plea. *Bradshaw*, 545 U.S. at 183 (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). At the guilty plea hearing, Petitioner testified that he was mentally competent and understood the terms of the plea agreement and the consequences of a guilty plea. The court asked Petitioner if he understood that he was pleading guilty without a plea bargain, and thus the sentencing court could sentence him "anywhere from two to ten years" imprisonment, and Petitioner stated he understood. Mr. Cooper attested that he advised Petitioner to reject the State's offer of five years imprisonment and instead enter an open plea, believing the sentencing court would either sentence Petitioner with deferred adjudication or along the lines of the State's five-year offer. The sentencing court instead sentenced Petitioner to eight years imprisonment.

Petitioner argues that he received the eight-year sentence because Mr. Cooper allowed him to be sentenced in different court than the one that took his guilty plea. He also appears to argue that the guilty-plea court was somehow bound by the five-year plea agreement. As to the first claim, the state habeas court found that Mr. Cooper had no control over the court dockets and thus not control which court sentenced Petitioner. The state habeas court also found that the five-year plea bargain was marked through

11

on Petitioner's Written Plea Agreement and replaced with "open" and that Petitioner's initials appeared next to the altered text.

Petitioner fails to rebut these findings with clear and convincing evidence, *see* 28 U.S.C. § 2254(e)(1) (state court findings are presumed correct unless rebutted by clear and convincing evidence), and is unable to point to anything in the record supporting his conclusory allegations that Mr. Cooper's performance was constitutionally deficient and rendered his guilty plea involuntary, *see United States v. Demik*, 489 F.3d 644, 646 (5th Cir. 2007) ("[C]onclusory allegations are insufficient to raise cognizable claims of ineffective assistance of counsel") (quoting *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000)).

Further, Petitioner does not show that, but for counsel's alleged errors, he would not have pleaded guilty and would have instead insisted on continuing to trial. *Armstead*, 37 F.3d at 206. Again, such an assessment partially turns on "a prediction of what the outcome of a trial might have been." *Id*. The written plea agreement and the transcripts from the plea and sentencing hearings show that Petitioner understood the charge to which he was pleading, that he was pleading guilty without a plea agreement, and the sentencing range. Petitioner hasn't provided any evidence that he would have preferred to proceed to trial rather than plead guilty. Rather, it appears Petitioner regrets his open plea as it resulted in a longer term of incarceration than the plea bargain. But this regret does not support finding that his counsel's performance was deficient or that, but for Mr. Cooper's actions, Petitioner would have chosen to continue to trial. The Court concludes

that the state habeas court's application of *Strickland* was not unreasonable and this claim is denied.

    *b.  Equal Protection (claim 2)*

In Petitioner's second claim for relief, he argues his right to equal protection was violated when the State withheld information regarding his mental health. Petitioner does not elaborate on this claim in his federal petition, but in his state petition he alleged his equal protection rights were violated when: (1) the prosecutor failed to explain a motion for discovery; (2) evidence was destroyed pursuant to Article 38.43; (3) under Article 64.01, a convicted person is entitled to DNA testing; (4) the State failed to disclose the "proper evidence" at trial; (5) the State knew Petitioner was incompetent to plead guilty but failed to disclose his mental health records at the plea hearing; and (6) Petitioner was entitled to probation or a motion for sentence reduction under § 12.44(a) of the Texas Penal Code. (ECF No. 9-2 at 71-72.)

The state habeas court made the following findings of facts:

44. First, apparently [Applicant] claims that the State did not explain the "motion for discovery." *See* Applicant's Petition, p. 8.

45. However, the Court finds that neither the State nor the defense filed a motion for discovery in this case.

46. Second, the Court finds that [Applicant] cites art. 38.34 of the Code of Criminal Procedure with regard to evidence being destroyed in his case. *Id.*

47. However, the Court notes that art. 38.34 pertains to theft cases and stolen property, neither of which is involved in this case.

48. Third, the Court finds that the Applicant notes that a convicted person may be entitled to DNA testing under art. 64.01, but he provides no explanation of why this fact has any bearing on his plea of guilty. *Id.*

13

49. Fourth, the Applicant claims that the State violated his [Fourteenth] Amendment rights by failing to disclose evidence, but the Court finds that he does not identify this evidence or indicate why its disclosure was necessary. *Id.*

50. Fifth, the Court finds that the Applicant claims that he was convicted under Chapter 62 of the Code of Criminal Procedure, but that is clearly incorrect, because he was convicted under Chapter 22 of the Texas Penal Code. *Id.* at 9.

51. Sixth, the Court finds that the Applicant claims that his plea of guilty was involuntary because it was given under duress because of his mental health and competency issues, which the State failed to disclose. *Id.*

52. However, the Court finds that before the trial court accepted his plea of guilty, it found the Applicant mentally competent, and that he was pleading guilty freely and voluntarily (I-RR-7-9).

53. Lastly, the Court finds that because of these alleged violations of his right to equal protection, the Applicant contends that he should have received probation under § 12.44(a) of the Penal Code. *Id.* at 9.

54. However, the Court finds that the Applicant has not shown that his right to equal protection was violated by Mr. Cooper's actions or by the State's actions in this case, therefore, he has not shown himself entitled to any relief.

(*Id.* at 118-19.)

On federal review of a state court habeas application, the state court's factual findings are presumed correct and it is Petitioner's burden to rebut them with clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). Petitioner has failed to provide any evidence whatsoever in his federal petition that rebuts these findings. Accordingly, this claim is denied.

c.  *Due Process (claim 3)*

In Petitioner's third claim for relief, he argues that his due process rights were violated when the State failed to notify Petitioner it had a witness for the sentencing hearing and then failed to abide by the five-year plea agreement. The state habeas court found the following:

> 56. The record reflects that the Applicant waived a jury trial and waived the right to confront witnesses against him, and cites no authority that compels the State under these circumstances to inform him of its witnesses, if any, at a sentencing hearing.

> 57. With regard to the five year agreement, as previously stated, the record reflects that the Applicant was aware of the change of the recommendation from 5-years to open, and he was admonished by Judge LePak that he was pleading open (I-RR-6).

> 58. The Court finds no showing that the Applicant's due process rights were violated.

(ECF No. 9-2 at 120.) As with his equal protection claim, Petitioner has failed to rebut the state court's factual findings with any evidence whatsoever, much less clear and convincing evidence. Accordingly, this claim is denied.

d.  *Ex Post Facto (claim 4)*

In Petitioner's final claim for relief, he argues his guilty plea and sentence violate the Constitution's Ex Post Facto Clause. Petitioner provides no further elaboration on this claim in his federal petition. In his state application, Petitioner's argument for this claim makes little sense. The state habeas court found the following:

> 61. The burden is on the Applicant to prove his claim by a preponderance of the evidence [*Ex parte Rains*, 555 S.W.2d 478 (Tex. Crim. App. 1980)], in that he must show, or at least allege, the detailed facts which give rise

15

to and compel each legal conclusion that entitles him to relief. *See Ex parte Hogan*, 556 S.W.2d 352 (Tex. Crim. App. 1977).

62. The mere allegation of a legal conclusion, such as ineffective assistance of trial counsel, unsupported by allegations of fact is insufficient, and need not be considered. *See Boyd v. Estelle*, 661 F.2d 388 (5th Cir. 1981).

63. Here, the Court finds that the Applicant has alleged a legal conclusion, an ex post facto violation, but has failed to support his allegation with sufficient and understandable facts.

64. The Court finds that Applicant's ground for relief here not supported by the record.

(ECF No. 9-2 at 121.)

"[M]ere conclusory allegations do not raise a constitutional issue in a habeas proceeding." *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983). Petitioner in no way explains how he believes his guilty plea violates the Ex Post Facto clause nor does he support this claim with any factual allegations. This claim is denied.

## IV. Certificate of Appealability

A petitioner may not appeal a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. *See Miller-El v. Cockrell,* 537 U.S. 322, 335-36 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). In cases where a district court rejects a petitioner's constitutional claims on the merits, "[t]he petitioner

must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a district court rejects a habeas petition on procedural grounds without reaching the constitutional claims, "a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the dismissal or denial of the Petitioner's § 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El*, 537 U.S. at 327 (citing *Slack*, 529 U.S. at 484). Accordingly, the Court will not issue a certificate of appealability.

It is therefore **ORDERED** that Petitioner's petition for writ of habeas corpus (ECF No. 1) is **DENIED WITH PREJUDICE**.

It is further **ORDERED** that no certificate of appealability will issue in this case.

SIGNED this 17th day of December, 2021.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE